UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 11-30268-FDS |
| | ) | |
| ABC&D RECYCLING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is an action for failure to pay rail common-carrier freight charges pursuant to a contract between plaintiff CSX Transportation, Inc. ("CSX") and defendant ABC&D Recycling, Inc. ("ABC&D"). CSX is an interstate rail carrier that provides customers with freight transportation services. ABC&D is a construction and demolition company that has used CSX to transport construction and demolition debris to a disposal location.

The underlying claim arises out of an agreement between the parties under which CSX transported 109 loads of ABC&D freight to a landfill site in Kentucky. CSX contends that ABC&D is obliged to pay it $344,817, plus 12% interest per year, for charges it incurred from April 2011 through September 2011.

CSX has moved for summary judgment. It contends that ABC&D has failed to provide full payment as set forth in the agreement. ABC&D does not dispute that it owes $270,320 in freight fees, but contests the additional $74,497 (plus accruing finance charges) sought by CSX.

For the reasons set forth below, plaintiff's motion for summary judgment will be granted.

I.      **Background**

    A.      **Factual Background**[1]

CSX Transportation, Inc. is an interstate rail carrier that provides freight transportation. (Pl. Ex. A). ABC&D Recycling, Inc., is a company that processes construction and demolition debris and ships that material to disposal locations. (Pl. Ex. B).

In 2010, CSXT and ABC&D entered into an agreement for the transfer of materials from ABC&D's facility in Ware, Massachusetts, to a landfill in Coalton, Kentucky. (Pl. Ex. B). The agreement was formed in the following manner.

On November 16, 2010, Joseph Dugary sent an e-mail to Patrick Hannon of ABC&D and Steve Fontaine of the Massachusetts Central Railroad, a connecting carrier. (Pl. Ex. 1). The e-mail began, "Pat, Steve, The rate has been published from Ware, MA to Coalton, KY. Joe." A chart followed that included a price of $2,480 per car, the origin, destination, route, and effective dates of the quote. (*Id.*).

The November 16 e-mail stated that the "authority" for the rate was "CSXT 10463." (*Id.*). Although it is unclear, apparently a "price authority" is the manner in which CSX quotes or makes available the prices and terms of rail shipments to customers. According to CSX, from November 2010 through November 2011, CSXT 10463 was the "governing private price authority" for the shipments at issue. (Pl. Ex. A ¶ 8). It is unclear whether the text of CSXT

---

[1] Many of the facts cited within are set forth in Plaintiff's Statement of Material Facts. Defendant has filed a three-paragraph statement of material facts, but has not responded to the vast majority of plaintiff's facts. As set forth in Local Rule 56.1, "[m]aterial facts . . . set forth in [a moving party's statement of material facts] will be deemed for purposes of the motion to be admitted by opposing party unless controverted by the statement required to be served by opposing parties." Accordingly, the Court deems all statements in Plaintiff's Statement of Material Facts, except those actually disputed, to be admitted.

10463 was included in the e-mail; there is text that appears to have been cut-and-pasted from another document, as set forth below, but it is not specifically identified as "CSXT 10463."[2]

The November 16 e-mail, as part of a cut-and-paste from another document, listed a series of "conditions." One of the conditions read as follows: "Price is subject to Tariff Series CSXT 8100." The text of CSXT 8100 was not included in the e-mail; it was, however, available online. CSXT 8100 provides, among other things, as follows:

> **ITEM - 16030 FINANCE CHARGE**
> CSXT will assess a finance charge of 12% per year (0.0329% per day) on linehaul freight charges that are not received by CSXT when due. . . . The finance charge will be assessed on the unpaid balance of any linehaul freight charge from the first day following the due date through the date of receipt of payment in full. The finance charge will be billed monthly for all linehaul freight charges that were paid late in the prior calendar month.
>
> **ITEM - 16035 LATE PAYMENT CHARGE**
> CSXT may assess a late payment charge of 10% on the outstanding balance of any charge that has not been received by CSXT when due. The late charge is in addition to the finance charge provided for in Item 16030. . . . .

(Pl. Ex. H).

Another condition set forth in the November 16 e-mail was a paragraph entitled "Fuel." (Pl. Ex. 1). That paragraph detailed fuel surcharges that would be assessed in the event that the monthly average price per gallon of highway diesel fuel equaled or exceeded 200 cents. (*Id.*).[3]

Finally, the November 16 e-mail provided the following:

> The linehaul freight rates included in this email have been made effective for you and assigned to the pricing authority outlined above. This e-mail also constitutes

---

[2] Confusingly, CSXT contends that CSXT 10463 was "attached" to the November 16 e-mail. (Pl. SMF ¶ 19). There is no evidence that any document was sent as an attachment to the e-mail; as noted, text from CSXT 10463 may have been pasted into the e-mail itself.

[3] The e-mail also stated, "Please click here to get information about CSXT's fuel surcharge," with a clickable link. (*Id.*).

>   a unilateral offer to enter into separate contracts for any individual freight movements you or your agents order using an included linehaul freight rate prior to finalization of a contract as described above. The terms of such a unilateral offer include (1) the applicable linehaul freight rate, and (2) the terms and conditions set forth in our standard Private Price List & Contract, available on ShipCSX.com. By ordering such transportation services, you are accepting and agreeing to the foregoing rates, terms and conditions with respect to that transportation. This unilateral offer will remain open until: (a) CSXT and you enter into a formal contract as described above, (b) you reject CSXT's offer, or (c) the thirty day offer period expires. CSXT may revoke this offer at any time by providing you with written or electronic notice of such revocation.

(*Id.*).[4]

The parties agree that after the November 16 e-mail was sent, ABC&D shipped materials by CSX on 109 occasions. The freight bills for those shipments indicate, among other things, "finance charge 12%/year on bills paid after due date."

The parties also agree that ABC&D has not paid CSX for those services. It is undisputed that, at a rate of $2,480 per rail car, ABC&D owes CSX at least $270,320.

### B.     Procedural History

On November 22, 2011, CSX filed a complaint in this Court seeking a judgment of $344,878.20, plus additional finance charges that continue to accrue. CSX also seeks costs and attorneys' fees.

CSX has moved for summary judgment. It contends that defendant has admitted that the rate charged to it by CSX was accurate. Because both parties agree that a contract existed and

---

[4] The parties do not appear to have included a copy of the CSXT "Private Price List and Contract" in the exhibits. The current version, available online at http://www.csx.com/share/wwwcsx_mura/assets/File/Customers/ Price_Lists_Tariffs_Fuel_Surcharge/Pricing_Generic/PPLC_Standard_Terms.pdf, includes the following language:

>   Payment of all rates and charges that may accrue and become due from [a potential customer] to CSXT in connection with . . . this Contract shall be made within the timeframes set forth in, and subject to the finance charges, late charges, and other provisions of Section 16, Tariff CSXT 8100 series . . . .

It also includes a paragraph concerning fuel rate adjustments. (*Id.*)

4

that all 109 shipments took place, CSX contends that there is no triable issue of material fact. CSX further contends that the agreed-upon contract incorporated the terms of CSXT 8100, and that the shipments were subject to a fuel surcharge and late fees and finance charges.

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making this determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

## III. Analysis

CSX contends that it is entitled to summary judgment because there is no genuine issue of fact as to the terms of the contract, which included various terms as to finance charges, late fees, and fuel surcharges. ABC&D contests the assertion that the offer incorporated those additional provisions. It accepts responsibility for the $270,320 in "freight charges," but denies responsibility for the $74,497 in "financing charges." (Def. Opp. at 1). Both parties focus, in particular, on whether the contract incorporated the terms of CSXT 10463.

As a threshold matter, there is no dispute that a contract was formed. By defendant's

own admission, CSX submitted an "offer" to ABC&D to transport its materials, and ABC&D subsequently accepted that offer by shipping its materials on CSX's rail system on 109 separate occasions. Accordingly, CSX contends ABC&D must be held to the terms and conditions of the contract.

ABC&D nonetheless denies CSX's allegations that the contract incorporated any special conditions. While admitting that it owes CSX $270,320, ABC&D contends that it did not agree to financing charges pursuant to CSXT 10463, and thus is not responsible for the additional $74,497, plus interest, sought by CSX. ABC&D also contends that even if it had agreed to financing charges, CSX has failed to demonstrate how it calculated the total financing charge of $74,497, and thus is not entitled to judgment as a matter of law for that charge. (Def. Opp. at 1-3).

### A. Liability under the Contract

#### 1. Incorporation of Terms by Reference

Although the parties do not dispute that a contract was formed, they assert different positions as to what terms were incorporated into that contract. CSX contends that the offer e-mail explicitly stated that the contract incorporated the terms set forth in the e-mail and (through CSXT 10463) the terms of CSXT 8100. Defendant contends that the contract only refers to CSXT 10463 once—in stating that it provides "authority" for the rate defendant was offered—and as a result, defendant was unaware that *all* the terms of CSXT 10463 applied to the contract. As a result, defendant contends that it should not be held responsible for a payment to which it never agreed.

"Incorporation by reference is a common tool in the drafting of contracts." *Artuso v.*

*Vertex Pharms., Inc.,* 637 F.3d 1, 7 (1st Cir. 2011). In order for terms to be incorporated into a contract by reference, "the document to be incorporated [must] be referred to and described in the contract so that the referenced document may be identified beyond doubt." *Schacter v. Circuit City Stores, Inc.*, 433 F. Supp. 2d 140, 143 (D. Mass. 2006) (quoting *Lowney v. Genrad, Inc.,* 925 F.Supp. 40, 47 (D.Mass.1995)). The contract's language must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract, rather than merely acknowledge that such material may be relevant to the history of the contract. *NSTAR Elec. Co. v. Dep't of Pub. Utilities*, 462 Mass. 381, 394-95 (2012) (citing *Northrop Grumman Info. Tech., Inc. v. United States,* 535 F.3d 1339, 1345 (Fed. Cir. 2008)). Where the language is ambiguous, it should be considered "in light of the 'contract as a whole, in a reasonable and practical way.'" *NSTAR Elec. Co.* 462 Mass. At 394-95 (quoting *MCI WorldCom Communications, Inc. v. Department of Telecomm. & Energy*, 442 Mass. 103, 113 (2004)). An interpretation rendering any part of the contract meaningless should be avoided. *LPP Mortgage Ltd. v. Sugarman*, 2007 WL 3232548, at *3 (D. Mass. Oct. 30, 2007).

Defendant's contention that CSX's offer was "insufficient to alert" it of CSX's intent to incorporate the terms and conditions of CSXT 8100 cannot withstand scrutiny. The e-mail explicitly stated that "[p]rice is subject to Tariff Series CSXT 8100." It also described in detail the calculations that would be used to assess additional fuel surcharges to each shipment. (Pl. SMF, Ex. A at 7). Furthermore, the offer stated that "[t]he terms of such a unilateral offer include . . . the terms and conditions set forth in [plaintiff's] standard Private Price List & Contract, available on ShipCSX.com." (Pl. SMF, Ex. A at 8). That Private Price List and Contract is not part of the record, but it appears undisputed that it also makes reference to CSXT

8100.

In short, the offer explicitly stated that the contract would be "subject to" CSXT 8100 (which included provisions for finance charges and late fees) and would include fuel surcharges.

### 2. **Duty to Read**

A party is deemed to know the contents of a contract to which he assents. *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 20 (1st Cir. 2009). Such a presumption exists even when a party never read the contract to which he assented. *Soto v. State Indus. Products, Inc.*, 642 F.3d 67, 78-79 (1st Cir. 2011). Indeed, Patrick Hannon, the former president and owner of ABC&D, acknowledged that he could have reviewed the terms and conditions of CSXT 10463, had he so desired. (Pl. SMF, Ex. A at 8). Defendant's choice not to understand—or for that matter, read—the terms by which it was bound will not shield it from liability today. To hold otherwise would entice an offeree *not* to read the contract, so that he could thereafter avoid the unfavorable terms and conditions of the contract.

### 3. **Mutual Assent**

Defendant finally contends that because it was unaware that the contract incorporated additional terms, it never assented to those terms, and cannot be held to their requirements.

Mutual assent, or a "meeting of the minds," is essential to contract formation. *Boise Cascade Corp. v. Reliance Nat. Indem. Co. Inc.*, 129 F. Supp. 2d 41, 45 (D. Me. 2001) (citing 1 Corbin, *Contracts* § 4.13 at 634–35 (1993)). Mutual assent is founded upon objective manifestations of a party's intent, rather than a hidden intent. *Id.* at 45-46 (citing *Pahlavi v. Palandjian,* 809 F.2d 938, 945 (1st Cir. 1987)). A party's intent is deemed to be what a reasonable man in the position of the other party would conclude his objective manifestations to

mean. *Id.* (citing John D. Calamari & Joseph M. Perillo, *Law of Contracts,* § 2.2, p. 26 (1998); 13 *Williston on Contracts,* § 1536, p. 11 (3d ed. 1970)).

Defendant never stated that it in any way rejected or limited plaintiff's offer. And it then proceeded to ship freight by CSX on 109 separate occasions over the course of a year. *See Boise Cascade Corp.*, 129 F. Supp. 2d at 46 n.4. Defendant thus objectively manifested its assent to the terms of the contract. Even assuming defendant is sincere in its claim that it did not understand the terms of the contract, defendant's objective manifestations of mutual assent require that the contract be upheld. *See id.* at 45; 13 *Williston on Contracts,* § 1536, p. 11 (3d ed.1970).

In summary, the offer by CSXT included the terms and conditions of CSXT 8100, which provides for the assessment of a 10% late charge on any balance that is not paid when due, plus a 12% finance charge. Defendant assented to those terms and shipped freight under the contract. Under the circumstances, defendant is therefore bound by the terms and conditions of CSXT 8100, as well as the fuel surcharge.

    **B.**     <u>**Damages**</u>

The freight bills provided by CSXT detail each charge it seeks to recover. (Pl. Ex. A-2). As previously stated, both parties agree that, at $2,480 per movement, the 109 movements that took place resulted in $270,320 owed by defendant to CSXT. Because defendant made a partial payment in the amount of $190 on freight bill number 36442606, CSXT has amended that sum to $270,130. (Pl. Reply. Br. n.5 at 9). As clearly demonstrated in the actual freight bills, each of the 109 movements was also subject to an additional fuel surcharge, totaling $46,950. Further, under CSXT 8100, each invoice that went unpaid was subject to a potential 10% late charge.

CSXT does not seek late charges for 14 of these invoices. (Pl. Reply Br. at 9). As for the remaining 95 invoices, however, CSXT assessed a 10% late charge, resulting in $27,737 owed to plaintiff in late charges. (Pl. Reply Br., Ex. K). The total owed for the actual movements ($270,130) plus the fuel surcharges ($46,950) plus the 10% late charge for the 95 invoices ($27,737), results in a sum of $344,817.

CSXT further contends that it is entitled to recover 12% interest per year on the $317,080 due.[5] According to the terms of CSXT 8100, "CSX *will* assess a finance charge of 12% per year (0.0329% per day) on linehaul freight charges that are not received by CSXT when due." CSXT 8100's terms further state that this charge will be "in addition to" the aforementioned late payment charge of 10% that "CSXT *may* assess."[6] As a result, unlike the late payment charge which *may* be assessed, the finance charge *will* be assessed. Hence, the defendant is liable for a 12% per year finance charge on all movements, including the 14 movements not assessed a late payment charge by CSXT.

CSXT has not, however, calculated how much defendant owes as a result of the finance charge. Thus, as to this 12% finance charge, the Court will enter summary judgment in favor of CSXT as to liability. CSXT may submit further evidence as to the actual amount owed in accordance with this memorandum and order.

## IV.  Conclusion

For the foregoing reasons, the motion of plaintiff CSX Transportation Inc. for summary

---

[5] This figure represents the total due ($344,817), less the 10% late charge ($27,737).

[6] CSXT 8100 is a public tariff, and its terms may be found at CSX's general website, CSX.com (http://www.csx.com/index.cfm/customers/prices-tariffs-fuel-surcharge/tariffs/the-csxt-8100-tariff/the-8100-tariff-active-and-current/).

judgement is GRANTED as to liability.  Judgment will be entered in an amount to be determined in accordance with this memorandum and order.

**So Ordered.**

/s/ F. Dennis Saylor<br>F. Dennis Saylor IV<br>United States District Judge

Dated: June 14, 2013