UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CSX TRANSPORTATION, INC.,      )
     Plaintiff,             )
                             )
v.                           )        Civil Action No. 11-30268-FDS
                             )
ABC&D RECYCLING, INC.       )
     Defendant.          )

MEMORANDUM AND ORDER ON THIRD PARTY'S MOTION TO QUASH
DEPOSITION SUBPOENA TO COUNTRY BANK FOR SAVINGS
AND FOR PROTECTIVE ORDER
(Dkt. No. 70)

ROBERTSON, M.J.

## I.    INTRODUCTION

CSX Transportation, Inc. ("CSX") is a judgment creditor of defendant ADC&D

Recycling, Inc. ("ABC&D").  Before the court in this civil case is a motion by third party

Country Bank for Savings ("the Bank") to quash and for a protective order, seeking to quash a

deposition subpoena issued to the Bank by CSX.  The Bank further requests that to the extent

there are documents in the possession of the Bank's attorneys concerning the Bank's sale of debt

against ABC&D and security interests it held in assets of ABC&D, the court decline to order the

production of any such documents on the basis of work product protection.  The motion was

referred to the undersigned for decision by presiding District Judge F. Dennis Saylor, IV.  CSX

opposes the motion.  The court having heard from the parties, the matter is ripe for decision.  For

the following reasons, and as more fully set forth below, the court denies the Bank's motion.

## II.    RELEVANT BACKGROUND

The underlying case here was an action for failure to pay rail common-carrier freight

charges pursuant to a contract between CSX and ABC&D.  ABC&D admitted to owing money

to CSX for freight charges, but disputed its obligation to pay certain finance charges (Dkt. No. 54 at 5).  Judge Saylor granted CSX's summary judgment motion (*id*. at 10-11), and, on August 1, 2013, entered judgment for CSX against ABC&D in the amount of $427,530.36.  The judgment provided that finance charges would continue to accrue until the freight bill was paid in full (Dkt. No. 58).

Patrick Hannon ("Hannon") had been the owner and operator of ABC&D and a real estate company, Ware Real Estate, LLC, which held title to the land on which ABC&D conducted its operations.  In May 2012, Hannon and his wife sought protection from their creditors by filing a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code. The case was subsequently converted to a Chapter 7 proceeding.  *See In re: Hannon*, No. 15-2269, slip op. at 2 & n.1 (1st Cir. Oct. 7, 2016).  Hannon bought ABC&D and Ware Real Estate, LLC with financial assistance from attorney George McLaughlin, who owned a financing company which loaned Hannon funds for the purchase.  The loan terms included warrant rights that entitled McLaughlin's financing company to purchase a 50.1 percent interest in ABC&D and Ware Real Estate, LLC.  After Hannon filed for bankruptcy protection, the financing company assigned its warrant rights to ABCD Holdings, LLC ("ABCD Holdings"), which exercised those rights.  *Id.* at 3.  On March 13, 2013, the bankruptcy court approved the sale of Hannon's remaining minority interest in ABC&D and Ware Real Estate, LLC to ABCD Holdings.  *Id.* at 4.  In *Hannon*, the First Circuit affirmed the Bankruptcy Court's denial of a discharge for Hannon, which denial was prompted by the filing of an adversary complaint by ABCD Holdings, ABC&D, and Ware Real Estate, LLC objecting to the discharge on the grounds that Hannon had diverted funds from ABC&D for his personal use.  *Id.* at 5-6.

During post-judgment discovery, CSX learned that the Bank held a lien and a note against ABC&D and its assets.  CSX further learned that the lien and note had been sold to Ware Holdings, LLC ("Ware Holdings").  On January 16, 2015, CSX served the Bank with a post-judgment subpoena seeking documents related to the transfer of the lien and other debts the Bank had held against ABC&D.  Following service of the subpoena, counsel for CSX conferred with the Bank's counsel to narrow and clarify the scope of the document requests.  As clarified and narrowed, CSX's counsel represented that the subpoena sought: (1) documents regarding the Bank's assignment of a UCC lien; (2) documents regarding the transfer or discharge of any of the items appearing in an attached list of loans and collateral/security agreements held by the Bank against ABC&D; and (3) copies of documents showing payments made by or on behalf of ABC&D on any of the debts owed by ABC&D to the Bank.  As to the kinds of documents sought within these three categories, counsel explained that, as to the first two, CSX was seeking copies of emails, written communications, documents of transfer such as contracts or agreements, and, as to the third, evidence of any payments made to the Bank, such as records of checks and wire transfers.  CSX agreed to limit the time frame for these requests to January 1, 2013 to the present and to make production subject to a confidentiality agreement (Dkt. No. 60-3 at 8).  CSX also agreed that documents showing the Bank's "internal" communications about the discharge or transfer of ABC&D's debts did not need to be produced because it was represented that the only such documents that existed represented the Bank's communications with its counsel (Dkt. No. 60-2 at 3).

The Bank produced documents to CSX on or around June 15, 2015 (Dkt. No. 68-2), consisting of the account payment history from January 2013 through March 2014; the executed Note Purchase Agreement; the executed Guaranty and Indemnification Agreement; the executed

Discharge and Termination of Mortgages and Collateral Assignments of Leases and Rents and UCC Financial Statement; the executed Receipt and Certificate of Compliance; the executed Assignment of Mortgage and Collateral Assignment of Rents and Leases; the executed Assignment of Security Agreements; the executed Assignment of Additional Term Loan Closing Documents; the executed Voluntary Surrender of Collateral Accounts; the executed Release of Trust Fund Property; the four U.C.C. Financing Statement Amendments; and the transmittal letter from Sapirstein and Sapirstein, P.C. to Frank P. Fitzgerald, P.C. (Dkt. No. 71 at 4-5). Following its review of the production, CSX noted the absence of documents evidencing communications by the Bank with representatives of Ware Holdings, ABC&D or other individuals or entities concerning the sale, transfer or discharge by the Bank of any debts or liens the Bank held against ABC&D.  CSX requested the production of all such documents or a representation by the Bank's counsel that no such documents existed (Dkt. No. 60-3 at 4).

At the hearing on the Bank's motion for a protective order, CSX's counsel represented that a company called Tri-County Recycling is now using equipment that used to belong to ABC&D to run a recycling business on the site previously owned by Ware Real Estate, LLC and occupied by ABC&D.  The reported decision regarding Hannon's bankruptcy petition shows a prior relationship between Hannon, McLaughlin, and ABCD Holdings.  *See Hannon*, No. 15-2269, slip op. at 3.  Ware Holdings is the purchaser of the ABC&D commercial paper that the Bank held.  Although, in its filings, the Bank refers to Ware Holdings as "a third party purchaser," and an "unrelated third party purchaser" (Dkt. No. 86 at 7, 12) – and Ware Holdings is unrelated to the Bank – Ware Holdings' relationship, if any, to ABC&D, Hannon, ABC&D Holdings, or McLaughlin is, at least as far as this court is aware, unknown.  Also unknown, so

4

far as the court is aware, is the identity of owner(s) and members of Ware Holdings and the source of Ware Holding's payment to the Bank for the ABC&D commercial paper.

III.    DISCUSSION

1.   Information at Issue

CSX seeks deposition testimony from a representative of the Bank about the sale and transfer of the liens and debt the Bank held against ABC&D, and it seeks compliance with this court's prior order requiring, *inter alia,* the production of documents showing communications exchanged between the Bank and Ware Holdings, possibly through their representatives, about the transaction.  According to CSX, counsel for the Bank has admitted that her firm has documents in its file evidencing communications exchanged between the Bank and Ware Holdings in the process of negotiating and effecting the sale and transfer of liens and debt the Bank held against ABC&D (Dkt. No. 72 at 6).

The Bank argues strenuously that, by producing the payment history on the Bank's loan to ABC&D and the final transactional documents related to Ware Holdings' acquisition of a commercial note and security interests given to the Bank by ABC&D, it has produced the only potentially relevant information it possesses.  The Bank further argues that communications between counsel for the Bank and Ware Holdings about the transaction reflect the mental impressions of counsel and are entitled to work product protection.  On this basis, the Bank seeks a protective order precluding CSX from deposing a representative of the Bank about the sale, transfer and discharge by the Bank of its debts and liens against ABC&D, and a ruling that documents responsive to this court's prior order need not be produced because they are not

relevant or are shielded from production by the work product doctrine.[1]  The Bank's position

lacks merit.

2.  Relevance

Rule 69(a)(2) permits a judgment creditor such as CSX to "obtain discovery from any

person – including the judgment debtor."  Fed. R. Civ. P. 69(a)(2).  "The rules governing

discovery in postjudgment execution proceedings are quite permissive."  *Republic of Argentina*

*v. NML Capital, Ltd.,* 134 S.Ct. 2250, 2254 (2014).  "The presumption is in favor of 'full

discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets and

otherwise enforce its judgment . . . .'"  *ClearOne Commc'ns v. Chiang*, 276 F.R.D. 402, 403 (D.

Mass. 2011) (quoting *United States v. Neumann*, No. 86-cv-0034, 1999 WL 156151, at *1 (D.

Mass. Mar. 5, 1999) (citation and quotation omitted)).  A judgment creditor such as CSX must

still demonstrate the relevance of the information it seeks in discovery.  *See* Fed. R. Civ. P.

69(b); Fed. R. Civ. P. 26(b)(1).  In its initial ruling on CSX's motion to compel, the court

indicated that CSX could have done a better job of demonstrating the relevance of the

information it seeks from the Bank (Dkt. No. 69 at 4).  At the hearing on the Bank's motion to

quash, CSX explained that there is a successor to ABC&D operating a similar business at the

same location using the same equipment, and that it seeks discovery, in part, to explore a

---

[1] According to CSX, the Bank's counsel has claimed that communications between counsel for the Bank and Ware Holdings about the transaction at issue are protected by the attorney-client privilege (Dkt. No. 72 at 5).  No such claim appears in the Bank's filings with the court.  CSX has represented that it is not seeking discovery of communications about the transaction between the Bank and its counsel (Dkt. No. 84 at 9).  These are the only communications for which the Bank has claimed the protection of the attorney-client privilege (Dkt. No. 71 at 3).  To the extent documents in the Bank's possession, custody, or control originated with Ware Holdings or its counsel, they are not protected by privilege in the Bank's or its counsel's possession.  *See In re Blier Cedar Co., Inc.*, 10 B.R. 993, 1001 (1981) ("Documents originating with third parties are uniformly held to be beyond the pale of the [attorney-client] privilege.")

possible fraudulent conveyance or a claim against a successor in interest (Dkt. No. 84 at 4-5, 14-17, 40).  CSX reasonably seeks information in the Bank's possession, if any, as to why, two years after ABC&D ceased operations, Ware Holdings was interested in acquiring the Bank's interest in ABC&D's assets and its debt to the Bank.  CSX further posits that during negotiations concerning the transfer of ABC&D's debt to the Bank and the liens held by the Bank, there may have been discussions between the Bank and Ware Holdings about sources of payment and the status of ABC&D assets.  The Bank's claim that the only discovery to which CSX is entitled is discovery concerning accounts at the Bank maintained by ABC&D, and debts, if any, owed by the Bank to ABC&D is too narrow, and is unsupported by legal authority, which provides, as CSX notes, that discovery in aid of postjudgment execution is permissive and permits wide ranging inquiry in aid of tracing assets of a judgment debtor that the debtor may be seeking to conceal.  *See Republic of Argentina*, 134 S.Ct. at 2254; *ClearOne Commc's*, 276 F.R.D. at 403; *cf. Hannon*, No. 15-2269, at 19-24 (while operating as a debtor in possession, Hannon diverted ABC&D assets to pay personal expenses and made false statements under oath about these activities).

### 3.  Work product protection

In addition to its contention that the information CSX seeks from the Bank is not relevant, the Banks asserts that "the negotiations of the deal between counsel [for the Bank and Ware Holdings] . . . constitutes work product . . . (Dkt. No 71 at 5-6), and, for this additional reason, the deposition subpoena should be quashed and the Bank should not be required to produce documents that evidence communications between the Bank and Ware Holdings about the terms of the transaction by which Ware Holdings acquired ABC&D's debt to the Bank and the Bank's security interest in ABC&D assets.

"In a discovery dispute, the burden to establish an applicable privilege rests with the party resisting discovery." *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000) (citing *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). The Bank has not met its burden. "[T]he focus of work product protection [is] on materials prepared for use in litigation, whether the litigation was underway or merely anticipated." *United States v. Textron, Inc.*, 577 F.3d 21, 29 (1st Cir. 2009). "It is not enough to trigger work product protection that the *subject matter* of a document relates to a subject that might conceivably be litigated." *Id.* (emphasis in original). The doctrine only protects against disclosure of materials actually prepared for litigation or trial. *Id.*

> Nor is it enough that the materials were prepared by lawyers or represent legal thinking. Much corporate material prepared in law offices or reviewed by lawyers falls in that vast category. It is only work done in anticipation of or for trial that is protected. Even if prepared by lawyers and reflecting legal thinking, '[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by [Federal Rule of Civil Procedure 26(b)(3)(A)]'

*Id.* at 29-30 (quoting Fed. R. Civ. P. 26 advisory committee's note (1970)). Nor is it a basis of protection from discovery that the documents are in the files of a law firm. "Rather, '[a] party is charged with knowledge of what its agents know, or what is in records available to it . . A party must disclose facts in its attorneys' possession even though those facts have not been transmitted to the party.'" *Axler v. Scientific Ecology Grp., Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (quoting 8A C.A. Wright & A.R. Miller, *Federal Practice and Procedure*, § 2177 (1994) at 318-19). "Similarly, a party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control." *Id.* It is well-established that documents and things in the possession of a lawyer that are not privileged and are not work product must be produced in response to a properly served subpoena. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d

65, 69 (1st Cir. 2011).  Moreover, to the extent the Bank's counsel is concerned about disclosing confidential business information, CSX has entered into a confidentiality agreement as to information produced by the Bank in response to CSX's discovery efforts (Dkt. No. 84 at 12).

It is possible that the Bank does not have possession, custody or control of any information that will aid CSX directly or indirectly in collecting its judgment against ABC&D, but CSX's quest is not an improper fishing expedition.  CSX is entitled to inquire.  The Bank's discovery responses have been unduly delayed.  Documents responsive to CSX's subpoena as narrowed through discussions among counsel (*see* Dkt. No. 69 at 2), including those in the possession of the Bank's attorneys, must be produced by no later than November 10, 2016, and the Bank must make a representative available for deposition by no later than November 30, 2016.  In view of the ethical obligations of confidentiality to the client, the court declines to grant sanctions against the Bank or its counsel at this time.  *See* Fed. R. Civ. P. 379a)(5)(A)(iii).

IV.    CONCLUSION

For the foregoing reasons, third party Country Bank for Savings' Motion to Quash Subpoena and for Protective Order is DENIED.  Supplemental documents responsive to the Rule 45 subpoena as narrowed, if any, will be produced by no later than November 10, 2016, and a representative of the Banks shall appear for deposition on a date prior to November 30, 2016 that is mutually convenient for the Bank and CSX.

It is so ordered.

Dated:  November 3, 2016                           /s/ Katherine A. Robertson
                                                  KATHERINE A. ROBERTSON
                                                  U.S. MAGISTRATE JUDGE